IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| GARY HOLTZER,<br><br>Plaintiff / Counterclaim-Defendant,<br><br>vs.<br><br>SHELLEY WILSON,<br><br>Defendant / Counterclaimant. | CIVIL NO. 1:26-cv-00362-MWJS-WRP<br><br>COUNTERCLAIM |

**COUNTERCLAIM**

Defendant/Counterclaimant SHELLEY WILSON ("Wilson"), by and through her undersigned attorneys, Goodsill Anderson Quinn & Stifel, A Limited Liability Law Partnership LLP, brings this Counterclaim against Plaintiff/Counterclaim Defendant GARY HOLTZER ("Holtzer") and alleges as follows:

PARTIES

1. Wilson is a resident of the City and County of Honolulu, State of Hawaiʻi.

2. Holtzer is a resident of North Salem, Westchester County, New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Wilson is a citizen of the State of Hawaiʻi, Holtzer is a citizen of the State of New York, and the amount in controversy exceeds the sum of $75,000.00.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Wilson is a resident of this district, and a substantial part of the events or omissions giving rise to the claims arose in this district.

## **FACTUAL ALLEGATIONS**

5. Holtzer is a senior partner and a global co-head of the restructuring practice at Weil, Gotshal & Manges, one of the largest law firms in the world.

6. Wilson runs a home-care business in Honolulu. Her annual income is a small fraction of what Holtzer earns monthly.

7. Holtzer gifted assets to his then-fiancée, Wilson, and after he ended their engagement, engaged in psychological abuse, coercive control, and emotional manipulation, which caused direct and physical harm to Wilson's mental health and well-being.

8. Holtzer has now turned to the courts in an effort to inflict maximum pain and emotional suffering.

9. By this action, Holtzer seeks to claw back the gifts that he freely gave, and to collect from an inflated and altered instrument, whose operative terms Wilson never knowingly approved.

10. Holtzer also seeks to recover the ring or, in the alternative, its claimed value. Holtzer, not Wilson, ended the engagement on February 18, 2025.

11. At the time, Wilson was suffering from a severe case of influenza. While Wilson was at a doctor's appointment, Holtzer abruptly left Hawaiʻi and flew back to New York without any advance notice, discussion, or conversation with Wilson regarding his departure.

**<u>Gifts to Wilson</u>**

12. During the parties' relationship, Wilson owned a condominium in Honolulu, Hawaiʻi that she previously shared with her ex-husband.

13. Holtzer made it known that he did not want to live in the condominium where Wilson was previously living with her ex-husband and insisted that she find a new residence.

14. At Holtzer's insistence, the parties agreed to purchase a residence located at 4577 Kahala Avenue, Honolulu, Hawaiʻi (the "Property"), despite Wilson's objection to the erosion and no-seawall risk, which materially affects sale ability and value.

15. At Holtzer's insistence, Wilson sold her own condominium at a loss and put her own savings toward the purchase of the Property.

16. Holtzer prepared a series of documents to Wilson styled as promissory notes relating to the purchase of the Property.

17. Holtzer drafted these documents on which this suit is built and worked directly with a local Hawaiʻi lawyer who prepared them. Wilson was not represented by counsel.

18. Holtzer presented Wilson with signature pages to sign, representing that her signature was needed only as a formality for his recordkeeping and tax purposes, in case he was audited, and that the documents were of no substantive consequence between them.

19. Holtzer periodically asked Wilson to sign updated versions of these documents for the same stated reason.

20. Because the parties were in a relationship, Wilson signed these documents, as requested, based on her trust in Holtzer, without being given the operative terms or understanding that she was undertaking any payment obligation.

21. On information and belief, after Wilson signed one or more signature pages, or through the unauthorized completion or attachment of those pages, Holtzer inserted or changed material terms of the instrument, including the stated principal amount, without Wilson's knowledge or authorization, so that the

Purported Note does not reflect the terms, if any, that Wilson understood herself to be assenting to when she signed.

22. An early version of this document, dated September 15, 2022, stated a principal sum of $1,000,000. A working draft of the instrument stated the same $1,000,000 figure, accompanied by a notation, in a draft prepared by or on behalf of Holtzer, that the amount was "[t]o be revised at closing to reflect actual amount advanced," with the interest rate likewise left open to be inserted later.

23. The September 15, 2022 instrument was itself internally inconsistent, reciting a figure of $1,700,000 in its heading while stating a principal of $1,000,000 in its body, an incongruity reflecting the unreliability of the documents Holtzer prepared.

24. The instrument Holtzer now sues upon is dated February 1, 2024, and states a principal sum of $1,925,000 at one percent interest (the "Purported Note").

25. On information and belief, Holtzer altered the instrument's terms, including the amount, without Wilson's knowledge.

26. The Purported Note recites that Holtzer's "source of satisfaction" is limited to the Property and its proceeds; it grants no mortgage, security interest, or lien, and Holtzer holds no recorded lien against, and is not on the title to, the Property.

27. On information and belief, Holtzer never advanced $1,925,000, or any other sum as a loan, to Wilson. Throughout the relationship Holtzer characterized any transfers between the parties as immaterial, on one or more occasions describing them as a "rounding error" relative to his income.

28. Wilson never knowingly agreed to owe Holtzer $1,925,000 or any other sum.

29. Wilson has repeatedly asked Holtzer to provide an accounting substantiating the claimed $1,925,000—what funds were advanced, when, and for what purpose. Holtzer has refused to provide any accounting or supporting documentation.

30. Since May 2025, when Holtzer stopped contributing, she alone has carried the expenses of the Property.

**<u>Holtzer's Psychological Abuse of Wilson</u>**

31. While the parties were still dating, Wilson developed multiple autoimmune diseases in 2021, was diagnosed with pneumonia in March 2023, and contracted a severe case of influenza in February 2025.

32. Holtzer was aware of Wilson's ongoing medical conditions.

33. However, during the parties' relationship and for months following the end of their engagement, Holtzer engaged in a series of tactics to

bully, harass, and abuse Wilson and her family members, which exacerbated her serious mental and physical conditions.

34. In February 2025, just before he ended the engagement, Holtzer lured Wilson to a joint virtual counseling session with a therapist that he had engaged.

35. Without consent, Holtzer disclosed private details about a childhood trauma Wilson had experienced to his therapist. The details of this were never disclosed to anyone except Holtzer, and Wilson never authorized Holtzer to divulge intimate details of her prior trauma.

36. Around this same time, Wilson contracted a severe case of influenza.

37. While Wilson was at a doctor's appointment, Holtzer abruptly departed Hawai'i and flew back to New York without any advance notice, discussion, or conversation with Wilson.

38. In March 2025, just one month after Holtzer ended the engagement, he shipped several boxes from New York to Wilson's Property, which purportedly included Wilson's personal items that were being kept at Holtzer's home.

39. The boxes, which were tousled and disorganized, were missing several of Wilson's belongings, including jewelry and clothing.

40. Moreover, the boxes contained belongings from Holtzer's deceased wife. Those items, unlike those of Wilson's personal items, were neatly packaged and had a distinct smell of fresh perfume.

41. The manner in which Wilson's personal items were sent back to her, including the intentional inclusion of Holtzer's deceased wife's possessions, resulted in serious health consequences for Wilson, including exacerbation of her pre-existing autoimmune conditions, prolonged illness, and post-traumatic stress symptoms.

42. In April 2025, Holtzer contacted Wilson's mother, who lives in Wisconsin, to "interrogate" her about Wilson's past and childhood trauma in a predatory fashion, creating mistrust and betrayal within the family, and reintroducing a haunting traumatic family experience of which even Wilson's family was not fully aware.

43. As a result of Holtzer's frequent and recurring psychological abuse and emotional manipulation, Wilson was hospitalized in June 2026 for three weeks after suffering a severe mental breakdown.

**Holtzer's Abuse of Judicial Process**

44. On September 22, 2026, Wilson was served with the Complaint in Honolulu.

45. Two days later, on September 24, 2026, Holtzer sent process servers to the Wisconsin home of Wilson's mother, an elderly woman with a terminal illness, who does not live with Wilson and could not accept service for her.

46. On September 24, 2026, Holtzer knew that Wilson did not reside with her mother in Wisconsin, had never resided at that address, and was not present at her mother's home when service was purportedly effectuated.

47. Holtzer's attempted service of the Complaint at Wilson's mother's residence in *Wisconsin*, even though service had already been effectuated and Wilson's mother could not accept service on Wilson's behalf, served no other purpose than to reach Wilson through her mother's suffering and to frighten her into paying.

48. At the time of this conduct, Holtzer knew that Wilson had already been personally served.

49. On information and belief, Holtzer also knew that Wilson's mother was gravely ill, that the mother did not reside with Wilson, and that her Wisconsin home was not Wilson's dwelling.

50. Holtzer could have had no good-faith belief that serving the mother would accomplish any legitimate purpose in this action.

51. Rather, Holtzer's intent was to intimidate and pressure Wilson and to inflict emotional pain upon her, so as to coerce her, through the suffering of her dying mother, into capitulating to Holtzer's demands.

52. Wilson's distress is the anguish, fear, and grief that any daughter would suffer upon learning that process directed to her had been pressed on her dying mother.

## **Blue Porsche Cayenne Turbo**

53. Prior to her relationship with Holtzer, Wilson purchased a blue Porsche Cayenne Turbo, which she used as her personal vehicle.

54. Upon Holtzer's request, Wilson agreed to sell Holtzer the vehicle for $1 and ship it to New York for his personal use.

55. Wilson arranged the transport, shipment, and delivery to Holtzer's residence in North Salem, NY.

56. The blue Porsche Cayenne Turbo has become the primary vehicle that Holtzer and his two children drive in New York.

## **COUNT I**
(Fraudulent Misrepresentation)

57. Wilson realleges and incorporates by reference the allegations contained in paragraphs 1-56 as though fully set forth herein.

58. Holtzer prepared a series of documents to Wilson styled as promissory notes in connection with the purchase of the Property and presented Wilson with signature pages to sign, representing that her signature was needed only as a formality for his recordkeeping and that the documents were of no substantive consequence between them.

59. After Wilson signed one or more signature pages, Holtzer intentionally inserted or changed material terms of the instrument, including the stated principal amount, without Wilson's knowledge or authorization.

60. Holtzer intentionally misrepresented the nature, purpose, and amount of the Purported Note and its predecessors, fraudulently informing Wilson that her signature was only as a formality for his recordkeeping.

61. On information and belief, Holtzer never advanced $1,925,000, or any other sum as a loan, to Wilson. Throughout the relationship, Holtzer intentionally misrepresented any transfers between the parties as immaterial, on one or more occasions describing them as a "rounding error" relative to his income.

62. Holtzer knew these statements were false in order to induce Wilson's agreement to sign the Purported Note and its predecessors.

63. Wilson did rely on Holtzer's false representations.

64. As a direct and proximate result of Holtzer's actions, Wilson has suffered damages in an amount to be proven at trial.

**COUNT II**
(Fraudulent Inducement)

65. Wilson realleges and incorporates by reference the allegations contained in paragraphs 1-64 as though fully set forth herein.

66. Holtzer knowingly made material representations about the nature, purpose, and amount of the Purported Note and its predecessors, including the stated principal amount of the document.

67. Holtzer knowingly made these false representations and exploited Wilson's trust in him for the purpose of obtaining Wilson's signature.

68. Wilson relied on Holtzer's false representations, signed these documents, as requested, based on her trust in Holtzer, without being given the operative terms or understanding that she was undertaking any payment obligation.

69. As a direct and proximate result of Holtzer's actions, Wilson has suffered damages in an amount to be proven at trial.

**COUNT III**
(Negligent Infliction of Emotional Distress)

70. Wilson realleges and incorporates by reference the allegations contained in paragraphs 1-69 as though fully set forth herein.

71. Holtzer had a duty to act with reasonable care to avoid causing foreseeable harm to Wilson.

72. Holtzer engaged in bullying, harassing, and abusive tactics against Wilson, including but not limited to, disclosing private details about Wilson's childhood trauma to his therapist without her consent.

73. Holtzer's disregard for Wilson's privacy and well-being has inflicted emotion distress upon Wilson.

74. As a direct and proximate result of Holtzer's actions, Wilson has suffered damages in an amount to be proven at trial.

## COUNT IV

(Intentional Infliction of Emotional Distress)

75. Wilson realleges and incorporates by reference the allegations contained in paragraphs 1-74 as though fully set forth herein.

76. Holtzer acted intentionally or recklessly by shipping Wilson's belongings back to her together with neatly packaged possessions of his deceased wife, interrogating Wilson's family about her past and childhood trauma in a predatory fashion, creating mistrust and betrayal within the family, and reintroducing a haunting traumatic family experience.

77. Holtzer, acting intentionally or recklessly, caused process directed to Wilson to be served on her terminally ill mother at the mother's home

in Wisconsin, after Wilson had already been personally served in Honolulu, for the purpose of reaching Wilson through her mother's suffering.

78. That conduct, individually and collectively, was outrageous and beyond all bounds of decency, and it caused Wilson extreme emotional distress, including exacerbation of her pre-existing autoimmune conditions, prolonged illness, and post-traumatic stress symptoms.

79. As a direct and proximate result of Holtzer's actions, Wilson has suffered damages in an amount to be proven at trial.

**COUNT V**
**(Abuse of Process)**

80. Wilson realleges and incorporates by reference the allegations contained in paragraphs 1-79 as though fully set forth herein.

81. Two days after service of the Complaint had been effectuated on Wilson in Honolulu, Hawai'i, Holtzer served Wilson's mother, an elderly woman with a terminal illness living in Wisconsin, who does not reside with Wilson and could not accept service for her.

82. Holtzer knew that Wilson did not reside with her mother in Wisconsin, had never resided at that address, and was not present at her mother's home when service was purportedly effectuated in Wisconsin.

83. Holtzer knowingly caused process directed to Wilson to be delivered to her mother, which served no purpose to carry out the process to its authorized conclusion.

84. Holtzer used the process of this Court primarily for an ulterior purpose, to intimidate Wilson and to coerce her capitulation, rather than for the purpose for which service of process is designed.

85. Holtzer's deliberate effort to serve a terminally ill nonparty at an address that was not Wilson's dwelling or usual place of abode, after Wilson had already received service, was a willful act in the use of process that was not proper in the regular conduct of the proceeding.

86. As a direct and proximate result of Holtzer's abuse of process, Wilson has suffered damages in an amount to be proven at trial. Holtzer's conduct was willful, wanton, and malicious, entitling Wilson to punitive damages.

**COUNT VI**

(Restitution of the Porsche Cayenne Turbo, in the Alternative)

87. Wilson realleges and incorporates by reference the allegations contained in paragraphs 1-86 as though fully set forth herein.

88. During the parties' relationship, Wilson transferred to Holtzer, for nominal consideration of $1, a Porsche Cayenne Turbo titled in her name, and arranged and paid for its shipment to Holtzer's home in New York, where Holtzer and his children have used it since.

89. Wilson maintains that property the parties have transferred to one another during their relationship, including the engagement ring and the funds Holtzer provided toward the Lava Orange Porsche Cayenne, remains with the recipient.

90. In the alternative, if and to the extent the Court holds that Holtzer is entitled to the return of any property he transferred to Wilson during the relationship, or to restitution of its value, the same principle entitles Wilson to the return of the Porsche Cayenne Turbo or, at Wilson's election, restitution of its value, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Wilson prays for judgment as follows:

A. Judgment in favor of Wilson and against Holtzer;

B. An award of compensatory, actual, special, general, and punitive damages to be shown at trial;

C. An award of Wilson's costs and reasonable attorneys' fees incurred in this action; and

D. Such other and further relief as shall be just, equitable, and proper in the circumstances.

DATED: Honolulu, Hawaiʻi, October 13, 2026.

*/s/ Jason M. Tani*

EDMUND K. SAFFERY
JASON M. TANI
JANICE T. FUTA
SHANNON M. WONG

Attorneys for Defendant and Counterclaimant
SHELLEY WILSON